**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON**

**CRIMINAL NO. 6:24-CR-47-REW**

**UNITED STATES OF AMERICA**                                                                 **PLAINTIFF**

**V.**                           **SENTENCING MEMORANDUM**

**SHAWN CURRY**                                                                                    **DEFENDANT**

\* \* \* \* \*

On August 12, 2024, Shawn Curry entered a guilty plea by Information to one count of deprivation of rights under color of law, a violation of 18 U.S.C. § 242. *See* [R. 7: Minute Entry for Arraignment & Rearraignment]. Mr. Curry has no objections to the Pre-Sentence Investigation Report (PSR) prepared by the United States Probation Office (USPO).

Based on the nature and circumstances of the offense, his history and characteristics, and his acceptance of responsibility, Mr. Curry respectfully requests the Court impose a probated sentence that includes a community service requirement. *See* PSR, Paragraphs 58-59. Given his financial profile and family obligations, Mr. Curry asks the Court to waive any fine or additional monetary penalty in this matter.[1]

---

[1] While restitution is mandatory pursuant to 18 U.S.C. § 3663A, Mr. Curry is unaware of any request for restitution submitted by the victim in this case. *See* PSR, Paragraph 12.

Mr. Curry offers the following to assist the Court:

### Nature and Circumstances of the Offense

Paragraphs 7-11 of the PSR describe the nature and circumstances of the offense. On September 3, 2021, the Manchester, Kentucky Police Department (MPD) received a 911 call about a fight at a local pool hall. Mr. Curry was an officer with MPD at that time. Mr. Curry and another MPD officer eventually responded along with a Kentucky State Police (KSP) trooper.

Prior to the call, surveillance footage from the pool hall shows the victim in this case confronting the owner, then leaping over a counter to attack him. *See* PSR, Paragraph 8. The owner and a bystander can be seen attempting to subdue the victim, with the bystander striking the victim with a pool cue several times in the face, head, and body. The victim later advised he was under the influence of "acid" or LSD that evening. *See* PSR, Paragraph 9.

The victim continued to struggle with and pursue the owner as officers arrived on scene. As they entered, both the owner and the victim were running around a pool table. The owner was still wielding a pool cue and later acknowledged that he walked toward Mr. Curry and "should [have] dropped the pool stick but didn't think of it[.]" [Exhibit 1: KSP Call Response Run Report, Page 2]. Both the owner and the victim were tased. The owner was incapacitated, but the victim tried "to get up and run from [Mr. Curry's] partner and [the] KSP trooper." PSR, Paragraph 8. Mr. Curry's partner and the trooper "attempt[ed] to apprehend the victim[,]" but he resisted arrest. *Id*. In the video, Mr. Curry's

partner "can be seen trying to use hand control on the victim [as] the KSP Trooper delivers blows with what appears to be a wooden stick" while the victim continued to "resist arrest." *Id*. "It also appears the KSP Trooper stepped on the victim's chest/head area to attempt to hold him down while striking the victim." *Id*.

"The KSP Trooper strikes the victim more than 15 times in the upper body and head area over the course of the arrest." *Id*. "The victim then stands and tries to walk away from the two officers after the arrest attempt." *Id*. In response, the KSP trooper "deployed a taser on the victim[,]" forcing him to the ground. *Id*. The victim continued to resist attempts to "apply restraints" and again stood up. *Id*. Mr. Curry's partner then "picks the victim up and throws him to the ground while the KSP Trooper delivers [more] strikes to the victim with the stick." *Id*.

At that point, Mr. Curry first approached the victim and attempted to assist. He "can be seen grabbing the victim by the hair on the back of the head…and striking the victim's face with his right fist a total of five times[.]" Mr. Curry's partner was simultaneously "delivering strikes to the victim's back while the KSP Trooper appears to strike the [victim] with the stick and tase the victim in the back at close range." *Id*. The victim was subsequently placed in restraints. *Id*.

Following the incident, Mr. Curry was interviewed by a KSP sergeant and suggested he hit the victim "on the left side of his shoulder/neck area" to subdue him. *Id*. at Paragraph 10. He said he "was going for the victim's shoulder but thought he made contact with the victim's face once because he would not cooperate and stay still." *Id*. While included in his KYIBRS Report discussing

the pool hall owner, Mr. Curry did not reference the use of force on the owner in his use of force memorandum. *Id*. *See also* [Exhibit 2: KYIBRS Report, Page 4].

In the PSR Addendum, USPO notes that Mr. Curry's use of force did not result in the fractured arm sustained by the victim. *See* PSR, Page 14 (Addendum). USPO also "acknowledges the use of force to the victim's head/face [by] the KSP trooper" may have caused or contributed to the victim's concussion and lacerations to the victim's face. *Id*.

### History and Characteristics of the Defendant

The PSR has discussed these considerations generally, but Mr. Curry offers the following additional information regarding his background:

Mr. Curry is a 36 year-old lifelong resident of Manchester, Clay County, Kentucky. *See* PSR, Paragraph 39. He is the only child of Melissa and Earl Curry and graduated from Clay County High School in 2006. *Id*. at Paragraph 47. Mr. Curry married Samantha Patterson in 2008. *Id*. at Paragraph 39. That marriage produced two sons—Rylan, age 16, and Wyatt, age 13. *Id*. Mr. Curry and Ms. Patterson divorced in 2018. Mr. Curry re-married in 2019 and maintains primary custody of both children. *See* [Exhibit 3: Brandi Buckner Letter, Page 1].

Mr. Curry's dedication to his family and community is unique and commendable. Manchester Fire Department Chief Charles Weaver recalls that Mr. Curry "served many years, well over a decade as a volunteer fireman" with the City of Manchester and Lockards Creek Fire Department. [Exhibit 4: Charles Weaver Letter]. During that time, Chief Weaver came to know Mr. Curry as "an

individual who will do all he can to help anyone regardless of identity, status, situation, [or] time of day[.]" *Id*. He has witnessed Mr. Curry "under great stress, pressure, and unfavorable situations" and notes he consistently "act[s] with compassion and concern for his fellow man." *Id*.

Fellow volunteer fireman Homer Weaver recalls that Mr. Curry's "determination and countless volunteer hours played a pivotal role in reviving" Lockards Creek Volunteer Fire Department when it was "on the brink of shutting down[.]" [Exhibit 5: Homer Weaver Letter]. Mr. Curry is "not a quitter and gives his all in everything he does." [Exhibit 3: Charles Weaver Letter]. "Beyond emergency responses," Homer remembers how Mr. Curry has "generously [given] his time to support community festivals and events, always with a professional and respectful demeanor." [Exhibit 5: Homer Weaver Letter].

Mr. Curry obtained an EMT license and began working for the Clay County Ambulance Service and Laurel County Ambulance Service in 2013. *See* PSR, Paragraph 48. Clay County EMS and Emergency Management Director Rodney Wagers notes that Mr. Curry has "faithfully served" the Clay County "community for over 12 years" and considers him an important "asset[.]" [Exhibit 6: Rodney Wagers Letter]. Those who have worked closest to him like Paramedic Brandi Bucker recall that Mr. Curry "always received compliments from his patients, their families, and the hospital staff because of his kindness, compassion, and bedside manner." [Exhibit 2: Brandi Buckner Letter]. Ms. Buckner says Mr. Curry "set the bar high when it c[omes] to being a good provider, employee, and

friend." *Id*. Fellow Clay County EMS employee Danny Allen has witnessed Mr. Curry's "bravery, selflessness, and sacrifice many times[,]" noting that he "has risk[ed] his life without hesitation to assist those in need and dying." [Exhibit 7: Danny Allen Letter]. Clay County EMS employee Eric Shepard similarly notes that when he is "responding to a call and hear[s]" Mr. Curry's "voice on the radio," he "know[s] the patients are in good hands." [Exhibit 8: Eric Shepard Letter].

Mr. Curry's former co-workers also recall his commitment to his family and other children in the community. Brandi Buckner "gained even more respect" for Mr. Curry when she saw "how involved he was in being a good parent." [Exhibit 3: Brandi Buckner Letter]. Mr. Curry regularly worked two jobs to provide for his "2 boys." [Exhibit 9: Trent Baker Letter]. Paramedic Sean Hacker recalls that Mr. Curry "always seemed to stop to give children a small amount of attention; countless smiles, high fives, and his gentleness [have] left numerous children walking away with a [sense] of pride knowing someone in a position of authority cared about them." [Exhibit 10: Sean Hacker Letter]. Mr. Hacker believes Mr. Curry's attitude is driven by his love for his own children. *Id*. "Everywhere we went he always seemed to have a smile or a passive joke, brightening the day of many within his path." *Id*.

Mr. Curry eventually took positions as a Clay County Deputy Sheriff in 2019 and as a Manchester Police Department Officer in 2020. *See* PSR, Paragraph 48. Given the limited size and resources of those departments, Mr.

Curry was thrown into the fire with little training. At the time he committed the offense at issue in this case, Mr. Curry had not yet completed basic training at the police academy in Richmond, Kentucky. *See id.* at Paragraph 47. Despite that deficit, Mr. Curry became known for his "grit and determination when he had a task in front of him" even if it involved "someone who was deemed extremely dangerous." [Exhibit 9: Trent Baker Letter]. Mr. Curry "earned the respect" of his colleagues because he "was always right there having your back." *Id.*

Stories about Mr. Curry's service to those in need are numerous. Homer Weaver recalls that his elderly grandmother "always requested" Mr. Curry to assist her when she was in need of EMS services "due to his unparalleled kindness and professionalism." [Exhibit 5: Homer Weaver Letter]. Trent Baker's mother has Multiple Sclerosis, and his father has dementia. His father "only requests" Mr. Curry when he or his wife need assistance "because of his professional approach" and "who [he] is as a person." [Exhibit 9: Trent Baker Letter]. Mr. Curry's "compassionate approach" has left a "lasting impression" on the many people he has helped over the years. [Exhibit 5: Homer Weaver Letter].

Leaders in the community like Manchester City Council member Dorothy Sizemore say Mr. Curry "has always displayed qualities of honesty, integrity, and responsibility" and notes that "[i]t is an honor to vouch for [his] character[.]" [Exhibit 11: Dorothy Sizemore Letter]. Former Mayor of Manchester James Garrison hired Mr. Curry as a law enforcement officer and has always known him to be an "upstanding guy with no complaints [who] always did what was asked of

him in a professional manner." [Exhibit 12: James Garrison Letter]. Clay County Circuit Court Clerk Leslie Phillips worked with Mr. Curry when he was a bailiff and during his time with the Clay County Sheriff's Office. To her, he is "an example of professionalism[.]" [Exhibit 13: Leslie Phillips Letter]. Her staff "considered [them]selves blessed to have him at the Courthouse." *Id*.

There is little doubt Mr. Curry's public service and contributions to his community have made a significant difference in the lives of many. His work as an EMT, a bailiff, a Clay County Deputy Sheriff, and a Manchester Police Officer are a "testament to his sense of duty and compassion toward others." [Exhibit 11: Dorothy Sizemore Letter]. Despite years of service in positions requiring constant interaction with the public, Mr. Curry has no prior history of excessive use of force or other malfeasance. His conduct in this case was a "single criminal occurrence" that was "committed without significant planning[,]" "was of limited duration[,]" and "represents a marked deviation…from an otherwise law-abiding life." *See* USSG § 5K2.20. Separate and apart from the nature and circumstances of the offense, Mr. Curry respectfully requests the Court vary downward from the applicable Guideline range of 18-24 months based on his background, his dedication to his community, and the aberrant nature of his conduct in this case.

## The Sentence

In all criminal cases, any sentence imposed should reflect the seriousness of the offense, promote respect for the law, and provide just punishment to the defendant. The sentence also should afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant. In addition, the sentence should provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner available. The Court is required to consider all of the types of sentences available. *See* 18 U.S.C. § 3553(a).

Mr. Curry used excessive force when assisting other officers as they struggled to gain control of a suspect who was under the influence of psychedelics; who had already committed an assault; and who had continued to resist arrest despite being struck and tased multiple times. He understands he should not have struck the victim in the face or downplayed his actions after the fact. However, the victim's conduct "contributed significantly to provoking the offense behavior[,]" and Mr. Curry's contact with the victim was likely not the cause of his most significant injuries. *See* USSG § 2K2.10. A sentence of probation will be sufficient to reflect the seriousness of the offense.

The same sentence will be sufficient to promote respect for the law. Mr. Curry entered a guilty plea by Information, agreeing to accept responsibility for his actions without an indictment or trial. Mr. Curry has no criminal history and has served his community as an EMT, bailiff, and law enforcement officer for

more than a decade. He has clearly demonstrated his profound respect for the law and dedication to law enforcement and our justice system throughout his life.

As for just punishment, Mr. Curry is now a convicted felon. Despite his background, he will never again serve in a law enforcement capacity. While he hopes his current employer will be able to allow him to continue his work as an EMT, it remains unclear if that will be possible given the nature of his conviction.

According to the Sentencing Commission's Interactive Data Analyzer, the median sentence in FY 2023 for defendants convicted of offenses primarily referenced to USSG § 2H1.1 was 18 months. However, unlike this case, the base offense levels for the most serious offenses referenced to USSG § 2H1.1 are derived from the "offense guideline applicable to [the] underlying offense" such as aggravated assault (USSG § 2A2.2). Here, Mr. Curry's conduct was not aggravated, did not involve the use of a weapon, and was not the cause of serious bodily injury.

The unique nature and circumstances of Mr. Curry's offense warrant a probated sentence. This is not a case involving an unprovoked physical altercation instigated by a law enforcement officer. The victim in this case repeatedly resisted arrest even after the pool hall owner, a bystander, and other officers subjected him to significant physical contact. The KSP trooper on scene struck the victim with a wooden stick "approximately 15 times in the upper body and head area over the course of the arrest." *See* PSR, Paragraph 8. The KSP trooper also stepped on the victim's chest/head area to attempt to hold him down while striking him. *Id*. The

victim was tased multiple times, lifted and slammed to the ground, and yet he continued to resist arrest. Again, Mr. Curry understands he should not have struck the victim in the manner he did or omitted certain details about the incident, but the situation facing him and other officers was far different than in most civil rights prosecutions.

Mr. Curry's felony conviction combined with monitored supervision and community service will also provide sufficient deterrence and protect the public from future criminal activity. By virtue of his conviction, Mr. Curry will never again be in a position of authority where a similar scenario could be possible. Instead, he will have to look for other ways to continue to contribute to the community he holds dear. Law enforcement officers will be wary to act in a similar manner or to downplay the use of force knowing the potential consequences, even in situations where a subject is actively resisting arrest.

## Conclusion

This case represents the end of Mr. Curry's career as a law enforcement officer. He was honored to have the opportunity to serve in that role because he has always loved his community and the people who live in it. His conduct in this case is a clear outlier from a life otherwise spent doing some of the most difficult work possible the right way. Despite this case, Mr. Curry's exemplary history of service demonstrates why so many people hope he will be there for them when they truly need it. While he is now a convicted felon, Mr. Curry looks forward to demonstrating to the Court, his family, and the people of Clay County that he

remains as hardworking and dependable as ever, always willing to "put others before himself."  [Exhibit 10: Sean Hacker Letter].

    For the foregoing reasons, Mr. Curry respectfully requests the Court impose a probated sentence that includes a community service requirement.  Mr. Curry also asks the Court to waive any fine or additional monetary penalty given his family obligations.

Respectfully Submitted,

/s/ Jarrod J. Beck

LAW OFFICE OF JARROD J. BECK, PLLC
101 WEST SHORT STREET
LEXINGTON, KENTUCKY  40507
TELEPHONE:  (270) 860-2025
JARROD.BECK@GMAIL.COM

/s/ Brandon J. Storm

STORM LAW OFFICE
107 NORTH MAIN STREET
LONDON, KENTUCKY 40741
TELEPHONE:  (606) 877-6655
BRANDON@STORMLAWOFFICE.COM

COUNSEL FOR SHAWN CURRY

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2024, I filed the foregoing sentencing memorandum with the Clerk of the Court, and the ECF filing system will notify all other counsel of record.

/s/ Jarrod J. Beck

COUNSEL FOR SHAWN CURRY